ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| RANGER AMERICAN ARMORED SERVICES, INC.,<br><br>Apelante,<br><br>v.<br>CASTRO BUSINESS ENTERPRISES, INC., h/n/c NGX MILITARY STORE; LOOMIS PUERTO RICO, INC.,<br><br>Apelada. | KLAN202400266 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan.<br><br>Civil núm.: SJ2020CV04502.<br><br>Sobre: incumplimiento de contrato; interferencia torticera; daños. |

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 23 de mayo de 2024.

Ranger American Armored Services, Inc. (Ranger o apelante), instó este recurso de apelación el 19 de marzo de 2024. Nos solicita que revoquemos la *Sentencia Sumaria Parcial* emitida el 16 de febrero de 2024, y notificada el 21 de febrero de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante esta, el foro primario declaró con lugar la solicitud de sentencia sumaria presentada por Loomis Puerto Rico, Inc. (Loomis), y determinó que no existía controversia de hechos y de derecho con relación a la causa de acción de Ranger contra Loomis por interferencia torticera en los contratos otorgados entre Ranger y Castro Bussiness Entrerprises, Inc. (Castro). En consecuencia, dictó sentencia sumaria parcial a favor de Loomis. Por último, el tribunal declaró sin lugar la solicitud de sentencia sumaria presentada por Ranger en contra de Castro, que trataba de la validez y vigencia de los contratos otorgados entre ellos.

Evaluados los sendos escritos de las partes comparecientes, resolvemos revocar la sentencia parcial apelada.

Número identificador

SEN2024_____

I

El 24 de agosto de 2020, Ranger presentó una demanda[1] sobre incumplimiento de contrato, interferencia torticera y daños al amparo del Art. 1802 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5141, en contra de Castro y Loomis. Alegó que había otorgado once (11) contratos con Castro, mediante los cuales se encargaba del recogido de valores en distintas localidades[2]. No obstante, arguyó que, el 26 de mayo de 2020, Castro le notificó la cancelación de todos los contratos efectivo el 30 de junio de 2020, y contrató los servicios de Loomis. Sostuvo que, al momento de la cancelación, Loomis tenía conocimiento de que dichas relaciones contractuales estaban vigentes. Por ello, razonó que Loomis había interferido torticeramente en la relación contractual entre Castro y Loomis.

De igual forma, el apelante adujo que existía un nexo causal entre la cancelación de los contratos y los daños económicos que había sufrido dada la intervención de Loomis. Además, señaló que Castro y Loomis actuaron en acuerdo para finalizar la relación contractual con Ranger. Por último, apuntó que la relación contractual entre Castro y Loomis era nula, dado que carecía de causa lícita. Así pues, solicitó se declarasen nulos los contratos entre Loomis y Castro, y que se les obligara solidariamente al pago de los daños económicos sufridos, los cuales valoró en una suma no menor de $53,624.25.

Así las cosas, el 7 de octubre de 2020, Loomis presentó su contestación a la demanda[3] y negó la mayoría de las alegaciones. Como defensas afirmativas, planteó que no había actuado negligente ni intencionalmente. De igual forma, alegó que desconocía de la relación contractual entre Ranger y Castro, por lo que no interfirió con dichos contratos. Argumentó que el contrato que suscribió con Castro era válido y

---

[1] *Véase*, apéndice del recurso, a las págs. 1-5.

[2] Las localidades de Castro ubicaban en Carolina, Puerta de Tierra, Cayey, Aguadilla, Barrio Obrero, Gurabo, Juana Díaz, Vega Baja, Arecibo, Ceiba y Mayagüez.

[3] *Véase*, apéndice del recurso, a las págs. 6-10.

que no existía un nexo causal entre sus actuaciones y los daños reclamados.

Por su parte, el 8 de diciembre de 2020, Castro presentó su contestación a la demanda y una reconvención[4]. Como defensas afirmativas, adujo que Ranger había instado el pleito a sabiendas de que había incumplido con los términos y condiciones del contrato y que había cobrado cantidades en exceso a las acordadas. Asimismo, indicó que los daños alegados en la demanda no eran previsibles, y que no existía un nexo causal entre los daños reclamados por Ranger y la conducta de Castro.

En su reconvención, Castro adujo que Ranger había cobrado incorrectamente una suma de dinero por concepto de alquiler de equipos de seguridad, luego de expirado el periodo de alquiler. En virtud de lo anterior, solicitó la restitución de los pagos en exceso, que estimó en $269,911.44.

Posteriormente, el 7 de enero de 2021, Ranger presentó su contestación a la reconvención[5], en la cual reiteró sus planteamientos iniciales. Añadió que el Anejo I de los contratos, intitulado *Client Safe, Pickup Location & Service Rates*, establecía la cuantía global que tenía que pagar Castro por el servicio de recogido de valores y el importe de la renta por los equipos de seguridad. A su vez, aclaró que una vez culminase el contrato, Castro advenía titular del equipo, siempre que cumpliese con los términos y obligaciones de este. No obstante, Castro canceló el contrato, por lo que no podía reclamar la titularidad de los equipos. Por último, arguyó que no tenía que restituir a Castro la suma reclamada.

Tras varios trámites procesales, el 24 de marzo de 2022, Ranger presentó una moción en solicitud de sentencia sumaria parcial[6]. En esencia, adujo que no existía controversia de hechos respecto a que tenía

---

[4] *Véase*, apéndice del recurso, a las págs. 11-17.

[5] *Íd.*, a las págs. 18-23.

[6] *Íd.*, a las págs. 40-213.

una relación contractual con Castro y que este había cancelado los once (11) contratos de servicios, que estaban vigentes al momento de la cancelación. Además, alegó que era un hecho incontrovertido que Loomis conocía de la relación contractual entre Castro y Ranger, por lo que Loomis había interferido torticeramente en dicha relación contractual. Por último, señaló que Castro y Loomis eran responsables solidariamente y le adeudaban la suma de $53,624.25.

Por su parte, el 28 de marzo de 2022, Loomis presentó su propia moción de sentencia sumaria[7], en la cual enfatizó que procedía la desestimación de la causa de acción por interferencia torticera. En específico, esgrimió que el término original de los contratos otorgados entre Ranger y Castro había culminado y que estos carecían de un término fijo, por lo que eran cancelables en cualquier momento. Sostuvo que el único requisito que Castro tenía que cumplir era notificar su voluntad de terminar los contratos con al menos sesenta (60) días previos a la fecha de aniversario del periodo original. Además, argumentó que era Ranger quien tenía que demostrar que tenía un contrato con Castro a término fijo, con el que Loomis interfirió. Por último, indicó que advino en conocimiento de que Ranger proveía el servicio de acarreo de valores durante la negociación de los contratos, y que había advenido en conocimiento de los términos y condiciones de los contratos durante el descubrimiento de prueba.

En respuesta, el 20 de abril de 2022, Ranger presentó su réplica[8] y reafirmó que Loomis tenía conocimiento de los contratos. De igual forma, arguyó que la moción de sentencia sumaria presentada por Loomis estaba apoyada en declaraciones juradas para su propio beneficio y que tales afirmaciones constituían prueba de referencia. Sostuvo que dichas afirmaciones únicamente podían ser rebatidas en un juicio plenario, en el cual se adjudicara credibilidad.

---

[7] *Véase*, apéndice del recurso, a las págs. 214-225. La moción de sentencia sumaria incluyó como anejos una declaración jurada de los señores Alejandro Abatti Denari y Axel Torres Rivera, ambos *branch managers* de Loomis.

[8] *Íd.*, a las págs. 356-372.

El 22 de abril de 2022, Loomis presentó su oposición a la moción solicitando sentencia sumaria parcial[9] de Ranger. Reiteró los planteamientos de su propia moción de sentencia sumaria y añadió que, luego de transcurrir los términos originales de los contratos, Castro estaba en su derecho de evaluar y entrar en acuerdos con otras compañías de acarreo, toda vez que los contratos con Ranger eran susceptibles de cancelación. Razonó que Castro no tenía que esperar a quedarse sin servicio de acarreo para comenzar a negociar un contrato con otra compañía. De otra parte, enfatizó que a Loomis le cobijaba el derecho de competencia que le otorgaba la libertad de realizar negocios en Puerto Rico. Asimismo, resaltó que Ranger no había logrado demostrar que Loomis tenía conocimiento de los términos y condiciones de los contratos con Castro.

El 4 de mayo de 2022, Loomis presentó su dúplica[10]. Por su parte, el 25 de mayo de 2022, Ranger presentó su réplica a la oposición a su solicitud de sentencia sumaria parcial[11].

A su vez, el 13 de mayo de 2022, Castro presentó una moción urgente en la cual solicitó la paralización de la adjudicación de la solicitud de sentencia sumaria, con el fin de que el foro primario permitiese culminar el descubrimiento de prueba[12]. Destacó que adjudicar las mociones sin culminar con el descubrimiento de prueba resultaba en una medida prematura y tenía el efecto de privarle de su derecho al debido proceso de ley.

En desacuerdo, el 16 de mayo de 2022, Ranger presentó su oposición[13]. En síntesis, alegó que el tribunal podía conceder el remedio sumario respecto a la causa de acción por interferencia torticera, dado que

---

[9] *Véase*, apéndice del recurso, a las págs. 374- 382.

[10] *Íd.*, a las págs. 383-395.

[11] *Íd.*, a las págs. 396-402.

[12] *Íd.*, a las págs. 407-411.

[13] *Íd.*, a las págs. 412-413.

con ello no se adjudicaba la totalidad del pleito; en particular, la reconvención instada por Castro en su contra.

El 1 de julio de 2022, el foro primario emitió una resolución[14], que se notificó el 5 de julio de 2022, en la cual declaró con lugar la solicitud de paralización hasta tanto culminara el descubrimiento de prueba.

Culminado este, el 16 de febrero de 2024, notificada el 21, el foro primario emitió su *Sentencia Sumaria Parcial*[15]. En ella, declaró con lugar la solicitud de sentencia sumaria presentada por Loomis, relacionada con la causa de acción por interferencia torticera. En consecuencia, declaró sin lugar la solicitud de sentencia sumaria parcial que presentara Ranger, en cuanto a Castro, dado que existían controversias de hechos. El tribunal aclaró que continuarían los procedimientos en cuanto a las reclamaciones restantes entre Ranger y Castro. Asimismo, determinó que no existía controversia en cuanto a los siguientes hechos materiales:

1. Entre Ranger y Castro existían once (11) contratos para el recogido y transportación de valores para once (11) localidades de Castro por parte de Ranger.

2. Los contratos entre Ranger y Castro contenían cláusulas en las cuales se establecía el siguiente lenguaje:
   *Subject to terms and conditions above service under this agreement shall commence on _____, and shall continue for a period of [THREE YEARS/ FOUR YEARS]. After the first [three/four years] of the agreement, it will automatically renew of an additional year, and from year to year after that, unless canceled with at least sixty (60) days prior written notification to the anniversary date of this agreement.*

3. Por su parte, Loomis se dedica a la distribución, manejo, almacenamiento y reciclaje de dinero en efectivo y otros valores para bancos, comercios y otros.

4. El 16 de enero de 2019, al Sr. Axel Torres, "Branch Account Executive" de Loomis recibió el contacto del Sr. Félix Román, presidente de HMCA, LLC, d/b/a Surf Shack, como potencial cliente.

5. El Sr. Torres contactó al Sr. Román.

6. Los señores Torres y Román acordaron reunirse el 29 de enero de 2019, en las instalaciones de NGX Carolina.

7. El 29 de enero de 2019, el Sr. Torres realizó una presentación al Sr. Román sobre el ecosistema de manejo de efectivo Loomis. Al conocer los productos y servicios de Loomis, el Sr.

---

[14] *Véase*, apéndice del recurso, a la pág. 414.

[15] *Íd.*, a las págs. 415-430.

Román mostró interés en llevar el ecosistema de manejo en efectivo Loomis a Castro, donde funge como "Chief Financial Officer".

8. Para el 17 de septiembre de 2019, Loomis y Castro habían sostenido comunicaciones para lograr una propuesta de servicios intitulada "Safepoint by Loomis".

9. El 13 de noviembre de 2019, Loomis y Castro otorgaron un "Service Agreement" ("Contrato de Loomis") para el acarreo y manejo de efectivo para varias localizaciones.

10. Localmente, las personas encargadas de la negociación y aprobación del Contrato de Loomis por parte de Loomis fueron el Sr. Torres y el Sr. Alejandro Abatti, "Branch Manager" de Loomis.

11. **Aunque los señores Abatti y Torres tenían conocimiento de que Ranger proveía el servicio de acarreo y manejo de efectivo a Castro, en ningún momento durante o antes de la negociación, ni al momento del otorgamiento del Contrato de Loomis, estos advinieron en conocimiento de los términos y condiciones de la relación contractual entre Ranger y Castro**.

12. El 31 de marzo de 2020, Loomis emitió una factura a Castro.

13. Para el 30 de abril de 2020, Loomis conocía que Ranger era el "current provider" de Castro.

14. Loomis y Castro acordaron que este notificaría a Loomis la fecha a partir de la cual se podían instalar las cajas fuertes en las distintas localidades y que pudiera comenzar a ofrecer servicio.

15. Con fecha de 29 de mayo de 2020, el Sr. Axel Torres, que para ese momento ocupaba la posición de Branch Account Executive de Loomis, le envió un correo electrónico al Sr. Alejandro Abatti de Loomis, confirmando el recogido de valores por parte de Loomis en las once (11) localidades que para ese entonces Ranger y Castro tenían o habían tenido contrato de recogido de valores.

16. El 16 de junio de 2020, el representante legal de Ranger envió una comunicación escrita al Sr. Félix Norman Román, socio fundador de Castro, mediante la cual le indicó sobre la vigencia de los once (11) contratos entre Ranger y Castro.

17. El 16 de junio de 2020, el representante legal de Ranger envió una comunicación escrita a Loomis PR, Inc., mediante la cual le advirtió sobre la relación contractual existente entre Castro y Ranger para el recogido de valores y otros servicios. Le advirtió que, de intervenir en tales contratos, presentaría la acción legal pertinente.

18. La cláusula 11.0 del "Master Service Agreement", suscrito entre Castro y Ranger, provee lo siguiente:

*11.0 Subject to the terms and conditions above service under this agreement shall commence on _____ and shall continue for a period of _____ years. After the first _____ of this agreement, it will automatically renew for an additional*

*year, and from year to year after that, unless canceled with at least sixty (60) days prior written notification to the anniversary date of this agreement. RANGER agrees that the rates will not change during the first year of this contract, except in the event of increases in "All Risk Insurance", Fuel, Federal Minimum Wage, and/or the FICA, FUTA, disability, unemployment, workmen's compensation, and any other Federal, or State salary taxes. Said increases will be passed along proportionately to CLIENT. RANGER will give notice to the client in advance to the date on which said increases will become effective. However, RANGER reserves the right to reopen this agreement at any time after the third year of service, for the sole purpose of increasing CLIENT'S service rate.*

19. Loomis comenzó a brindar servicio en las siguientes localidades de Castro, en las siguientes fechas:

    a. Castro Cash N' Carry, el 1 de julio de 2020.
    b. NGX Aguadilla, el 5 de junio de 2020.
    c. NGX Arecibo, el 3 de junio de 2020.
    d. NGX Base Muñiz, el 3 de junio de 2020.
    e. NGX Cayey, el 3 de junio de 2020.
    f. NGX Gurabo, el 3 de junio de 2020.
    g. NGX Ceiba, el 3 de junio de 2020.
    h. NGX Juana Díaz, el 3 de junio de 2020.
    i. NGX Mayagüez, el 4 de junio de 2020.
    j. NGX Vega Baja, el 3 de junio de 2020.
    k. NGX San Juan, el 3 de junio de 2020.

20. Poco después de que Loomis comenzara a dar servicios a Castro, luego de que se instalaran las cajas fuertes, el 16 de junio de 2020, Ranger, a través de su representación legal, envió una carta a Loomis mediante la cual solicitó el cese y desista de la supuesta intervención torticera en los contratos entre Ranger y Castro.

21. Con la carta enviada el 16 de junio de 2020, no se incluyeron los contratos entre Ranger y Castro.

22. **Loomis se enteró, por primera vez, sobre la existencia de contratos supuestamente vigentes entre Ranger y Castro mediante la carta enviada por Ranger el 16 de junio de 2020**.

23. **No fue sino hasta después de presentada la demanda del caso del título, y ya comenzado el descubrimiento de prueba, que Loomis, a través del Sr. Abatti, obtuvo copia de los contratos entre Ranger y Castro**.

24. **Los representantes de Loomis entendían que cualquier relación contractual entre Castro y Ranger culminaría antes de que Loomis comenzara a brindar servicios a Castro**.

25. Los contratos entre Ranger y Castro no tenían términos fijos, ya que los términos originales de dichos contratos habían vencido y estos se renovaban de año en año, a menos que estos fueran cancelados.

26. Los contratos entre Ranger y Loomis tenían términos originales de tres (3) o cuatro (4) años.

27. Las fechas de aniversarios y los términos originales de los contratos entre Castro y Ranger eran los siguientes:

    a. Castro Cash N' Carry, el 1 de diciembre de 2008 – 4 años.
    b. NGX Aguadilla, el 1 de diciembre de 2008 – 3 años.
    c. NGX Arecibo, el 18 de diciembre de 2008 – 3 años.
    d. NGX Base Muñiz, el 5 de noviembre de 2008 – 4 años.
    e. NGX Cayey, el 6 de noviembre de 2010 – 3 años.
    f. NGX Gurabo, el 1 de diciembre de 2008 - 3 años.
    g. NGX Ceiba, el 1 de abril de 2009 – 3 años.
    h. NGX Juana Díaz, el 1 de diciembre de 2008 – 3 años.
    i. NGX Mayagüez, el 9 de junio de 2009 – 3 años.
    j. NGX Vega Baja, el 1 de diciembre de 2008 – 3 años.
    k. NGX San Juan, el 5 de noviembre de 2008 – 4 años.

28. **El único requisito para cancelar los contratos entre Ranger y Castro era notificar la voluntad de terminar los mismos con al menos sesenta (60) días de la fecha de aniversario**.

29. **Castro notificó a Ranger la cancelación de los contratos mediante carta fechada el 26 de mayo de 2020, antes de que Loomis comenzara a dar servicios a Castro**.

(Énfasis nuestro).

De otra parte, el foro primario determinó que existía controversia sobre la cuantía presuntamente no pagada por Castro a Ranger, por concepto de los meses restantes de los contratos, a partir de la fecha de cancelación.

Respecto a la causa de acción por interferencia torticera, el tribunal concluyó que Ranger no había logrado establecer que mediara culpa alguna por parte de Loomis. En lo pertinente, expresó que Loomis había sometido prueba fehaciente de que los oficiales encargados de las negociaciones del contrato con Castro entendían que toda relación contractual entre Castro y Ranger habría de culminar antes de que Loomis comenzara a brindar sus servicios a Castro. Por tanto, razonó que a Loomis no se le podía imputar conocimiento de la existencia de un contrato vigente entre Ranger y Castro. Por tanto, el foro primario determinó que no procedía la causa de acción en contra de Loomis, por no haberse demostrado el elemento de culpa.

Adicionalmente, el foro primario concluyó que Ranger se había limitado a indicar que las declaraciones juradas sometidas por Loomis constituían prueba de referencia, a pesar de que la Regla 36 de

Procedimiento Civil, 32 LPRA Ap. V, establecía que las declaraciones juradas eran evidencia suficiente para establecer un hecho esencial para propósitos de la sentencia sumaria. Así pues, el foro primario apuntó que una declaración jurada que establecía hechos que le constaban de propio y personal conocimiento al declarante eran suficientes para sustentar un hecho.

En cuanto a los contratos entre Castro y Ranger, el tribunal concluyó que la causa de acción por interferencia torticera resultaba improcedente cuando la relación contractual era terminable a voluntad de las partes contratantes. Aclaró que las cláusulas de los contratos eran cancelables a voluntad de las partes, luego del término original, y que Loomis no había interferido en contratos de exclusividad o con término fijo, dado que estos podían ser cancelados por las partes contratantes.

Por último, el tribunal determinó que, transcurridos los términos originales de los contratos con Ranger, Castro estaba en todo su derecho y libertad de evaluar y entrar en acuerdos con otras compañías de acarreo. Enfatizó que no resultaba lógico concluir que Castro tuviese que esperar a quedarse sin servicio de acarreo para comenzar a negociar un contrato con otra compañía. De otra parte, expresó que a Loomis le cobijaba el derecho de competencia que le daba la libertad de realizar negocios en Puerto Rico. Reiteró que que el único requisito que Castro tenía que cumplir era notificar su voluntad de terminar los contratos con al menos sesenta (60) días antes de la fecha de aniversario del periodo original, lo cual hizo. Por todo lo anterior, coligió que no se cumplieron con los requisitos para una acción torticera por parte de Loomis.

Inconforme, el 19 de marzo de 2024, Ranger presentó este recurso, en el que apuntó la comisión de los siguientes errores:

> Erró el TPI, Sala de San Juan, por voz de la Hon. Juez Katyana Farokhzadeh López, al declarar con lugar la solicitud de sentencia sumaria presentada por Loomis fundamentando la misma en asuntos de credibilidad, cuando jurisprudencialmente es norma que no es aconsejable utilizar el mecanismo de sentencia sumaria en casos donde existe controversia sobre elementos subjetivos de intención, propósitos mentales o cuando el factor credibilidad es

esencial y está en disputa. *Rodríguez García v. UCA*, supra, *Ramos Pérez v. Univisión*, supra. De igual manera, erró el TPI al aplicar incorrectamente los elementos de la doctrina sobre interferencia torticera de terceros en los contratos y así decidir sumariamente el asunto.

Erró el TPI, Sala de San Juan, por voz de la Hon. Juez Katyana Farokhzadeh López, al interpretar erróneamente la cláusula del contrato entre RAASI y CBE, que establecía la forma y manera para la renovación y/o cancelación del mismo. Ello llevó al TPI a, de forma equivocada, determinar que CBE canceló correctamente los 11 contratos. El Honorable Tribunal carecía de suficientes elementos de juicio para así determinarlo. De entender que era necesario interpretar las cláusulas contractuales, ello requería de prueba de la intención de las partes, que resulta ser el criterio fundamental para fijar el alcance de las obligaciones contractuales. Tan fundamental es tal criterio que es norma que si no se puede determinar la voluntad de las partes con la mera lectura de las cláusulas contractuales se deberá recurrir a los actos anteriores, coetáneos y posteriores al perfeccionamiento de los contratos. En la situación de autos, salta a la vista el claro lenguaje de la cláusula contractual en controversia. De haber existido duda en su interpretación el remedio sumario no era el adecuado.

Erró el TPI, Sala de San Juan, por voz de la Hon. Juez Katyana Farokhzadeh López, al darle gran peso en su decisión al contenido de declaraciones juradas hechas por funcionarios de Loomis para beneficio propio y las cuales contenían prueba de referencia múltiple.

Conforme ordenado, el 19 de abril de 2024, Loomis presentó su alegato en oposición.

Examinados los escritos de las partes, y la sentencia sumaria parcial dictada por el foro primario, resolvemos.

II

A

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula todo lo concerniente a la sentencia sumaria. Como es sabido, el propósito de este mecanismo procesal es disponer ágilmente de los casos en los que no estén presentes hechos materiales en controversia, que requieran la celebración de un juicio en su fondo. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 277 (2011).

Para que esta proceda debe surgir preponderantemente de la prueba que acompaña la sentencia sumaria que no existe controversia sobre hechos medulares del caso. *Íd.* Por tanto, cualquier duda no es

suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una duda que permita concluir la existencia de una controversia real y sustancial sobre los hechos relevantes y pertinentes. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 277.

El Tribunal Supremo de Puerto Rico ha "definido un hecho material como aquel que, de acuerdo con el derecho aplicable, puede alterar la forma en que se resuelve un caso". *Íd.*, a la pág. 278. Véase, además, *Zambrana García v. ELA et al.*, 204 DPR 328, 341 (2020), y *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Así pues, "[e]n ausencia de una controversia de hechos materiales, el tribunal dictará sentencia si procede en derecho". *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278, y *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1024 (2020),

De otra parte, **el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versen esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como es la intención, los propósitos mentales o la negligencia.** *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278. No obstante, esto no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que habrán de ser considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales. *Íd.*

Finalmente, al evaluar la procedencia de una sentencia sumaria, los tribunales revisores nos encontramos en la misma posición que el Tribunal de Primera Instancia. *Íd.*; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR, a la pág. 1025; *Meléndez González et al. v. M. Cuebas*, 193 DPR, a la pág. 115. Si los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.* Por lo tanto, "si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá

conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria". *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278.

B

El Tribunal Supremo de Puerto Rico reconoció la existencia de una causa de acción por interferencia culposa con relaciones contractuales, al amparo del Art.1802 del Código Civil de Puerto Rico, 31 LPRA sec. 5141. Dicha causa de acción propone la existencia de una responsabilidad solidaria entre el tercero interviniente y el contratante que, a sabiendas, incumple con los términos de la obligación asumida con aquel que reclama. *Gen. Office Prods. v. A.M. Capen's Sons*, 115 DPR 553, 558 (1984).

Conforme a lo dispuesto por Tribunal Supremo, los elementos constitutivos de esta causa de acción son los siguientes: (1) la existencia de un contrato con el cual interfiere un tercero. Si lo que se afecta es una expectativa o una relación económica provechosa sin que medie contrato, la acción no procede, aunque es posible que se incurra en responsabilidad bajo otros supuestos jurídicos; (2) que haya mediado culpa. Basta con que el perjudicado pruebe o presente hechos que permitan inferir que el tercero actuó intencionalmente, con conocimiento de la existencia del contrato; (3) que se ocasione un daño al actor; y, (4) que el daño sea consecuencia de la actuación culposa del tercero. *Gen. Office Prods. v. A.M. Capen's Sons*, 115 DPR, a las págs. 558-559.

Por otro lado, en *Dolphin Int'l of P.R. v. Ryder Truck Lines*, 127 DPR 869 (1991), el Tribunal Supremo reiteró que en aquellos casos en que la relación contractual con la que se interfiere es una terminable a voluntad de las partes, el tercero que interfiere no será responsable en una acción en daños y perjuicios por interferencia culposa. *Íd.*, a la pág. 886. Bajo dicha premisa, el Tribunal Supremo estableció que para que pueda iniciarse la acción por interferencia culposa contra el tercero no solo debe existir un contrato, sino que este sea a término fijo. *Íd.*, a la pág. 883.

III

De entrada, debemos señalar que el presente recurso versa sobre la concesión de una sentencia sumaria.

Como cuestión de umbral, nos compete revisar *de novo* la procedencia del dictamen por la vía sumaria. Luego de analizar la sentencia sumaria presentada por el apelante, así como la oposición, colegimos que algunos hechos materiales acogidos por el foro primario están en controversia. A tales efectos, no acogemos las determinaciones de hechos incluidas por el tribunal en su sentencia parcial; en particular, los hechos núm. 11, 22, 23 y 24, que tienen que ver con el conocimiento o desconocimiento de Loomis sobre la relación contractual entre Ranger y Castro y los términos de la misma[16].

Según el derecho anteriormente expuesto, no es aconsejable dictar sentencia sumaria en casos cuyas controversias versen esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como es la intención, los propósitos mentales o la negligencia. *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278. Claro está, esto no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que sean considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales. *Íd.*

A su vez, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, dispone que una moción de sentencia sumaria debe estar fundamentada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 430.

Surge del expediente ante nuestra consideración que Loomis presentó dos declaraciones juradas en apoyo a su moción de sentencia

---

[16] *Véase*, apéndice del recurso, a las págs. 417-421.

sumaria. En específico, presentó las declaraciones del señor Abatti Denari y del señor Torres Rivera, ambos *branch managers* de Loomis. Ello, a los fines de explicar el proceso de la negociación de los contratos con Castro. Mediante dichas declaraciones juradas, indicaron que, al momento de la negociación, conocían de los contratos suscritos entre Ranger y Castro. No obstante, afirmaron que no fue sino hasta el descubrimiento de prueba en este caso que advinieron en conocimiento sobre los términos y condiciones de los contratos entre Castro y Ranger. Por último, aclararon que, como encargados de las negociaciones de los contratos, actuaron bajo el entendido de que comenzarían a ofrecer los servicios a Castro, una vez culminara el contrato con Ranger.

Es decir, Loomis propone que el hecho medular de que, aunque los señores Abatti y Torres tenían conocimiento de que Ranger proveía el servicio de acarreo y manejo de efectivo a Castro, en ningún momento durante o antes de la negociación, ni al momento del otorgamiento del contrato con Loomis, ellos conocieran los términos y condiciones de la relación contractual entre Ranger y Castro.

Si bien Ranger se limitó a alegar que Loomis sí tenía conocimiento previo de los contratos con Castro y de sus términos, no será sino hasta la adjudicación de credibilidad de los testimonios de los señores Abatti y Torres que el tribunal podrá concluir que, en efecto, Loomis desconocía de su posible intervención en una relación contractual.

Nótese que, a pesar de que la Regla 36.1 de Procedimiento Civil permite sustentar la moción de sentencia sumaria mediante declaraciones juradas, no existe prueba suficiente que nos permita concluir que Loomis no interfirió con la relación contractual entre Ranger y Castro. De igual forma, nada surge de los documentos presentados por las partes que nos persuada a determinar que Loomis haya actuado sin que mediase intención, propósito o negligencia al otorgar sus contratos con Castro. Por ello, determinamos que el foro primario estaba impedido de acoger la moción de sentencia sumaria presentada por Loomis. Cabe reiterar que el

asunto en controversia es uno de credibilidad, por lo que el tribunal debe recibir prueba y aquilatar la misma en un juicio en su fondo.

IV

Por los fundamentos antes expuestos, revocamos la *Sentencia Sumaria Parcial* emitida el 16 de febrero de 2024, notificada el 21 de febrero de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones